UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Case No. 17-CV-4770 (NSR)

CHRISTOPHER ROSS,

     Plaintiff,

 -against-

PORT CHESTER HOUSING AUTHORITY,
VILLAGE OF PORT CHESTER
EXECUTIVE DIRECTOR ROBERY J.
VYSKOCIL, PORT CHESTER POLICE OFFICER
KEVIN MUNNELLY, *in his official and individual
capacity*,

     Defendants.

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

 Plaintiff Christopher Ross ("Plaintiff"), proceeding *pro se*, commenced the instant action on June 22, 2017. (*See* Complaint, ECF No. 2; Amended Complaint, ("AC"), ECF No. 39.) In this action, he alleges claims sounding in: First, Fourth, and Fourteenth Amendments to the United States Constitution, Title VI of the Civil Rights Act of 1964, Title VII of the Civil Rights Act of 1968, the Fair Housing Act, the Civil Rights Act of 1886, 42 U.S.C. 1981, the United States Housing Act, the New York State Constitution and New York State Human Rights Law. Presently before the Court are Defendants' Motions to Dismiss Plaintiff's AC. (*See* ECF Nos. 68, 78.)

 For the following reasons, Defendants' Motions are GRANTED.

## BACKGROUND

 For the purposes of this motion, all facts in Plaintiff's Amended Complaint are taken as true and are constructed in the light most favorable to *pro se* Plaintiff.

 On December 3, 2015, several months after Plaintiff was indicted by the Village of Port Chester for knowingly and unlawfully attempting to sell a controlled substance, Port Chester

Housing Authority ("PCHA") banned Plaintiff from their properties. (AC ¶ 11.)[1] This ban was effectuated when a detective from the Port Chester Police Department ("PCPD") served Plaintiff a letter notifying him of such on January 21, 2016. (*Id.* ¶ 12.) Nevertheless, on January 5, 2017, Plaintiff entered a PCHA property to visit a friend. There, he was allegedly stopped, questioned, frisked, and arrested by PCPD Officer Munnelly (*Id.* ¶ 13.) Subsequently, on January 17, 2017, a PCHA resident sent a letter to Plaintiff, which related that Plaintiff was an invited guest. (*Id.* ¶ 14.) A few months later, on September 2017, Plaintiff received a copy of the September 2017 PCHA banned persons list and discovered that 115 of the 120 people on the list were African American. (*Id.* ¶ 17.)

Plaintiff alleges that there is a pattern of unlawful stops, questions, frisks, searches and arrests of PCHA residents and their guests, which violates the First, Fourth, and Fourteenth Amendments, Title VI of the Civil Rights Act of 1964, Title VII of the Civil Rights Act of 1968, the Fair Housing Act, the Civil Rights Act of 1886, 42 U.S.C. 1981, the United States Housing Act, the New York State Constitution, and New York State Human Rights Law. (*Id.* at 1-2.) He also alleges the Housing Authority and Village Defendants acted under the color of law causing him damage from, *inter alia*: the false arrest, false imprisonment, and abuse of process. (*Id.*)

Plaintiff seeks: class certification along with a permanent injunction for the putative class enjoining defendants from continuing to assist in carrying on the racially discriminatory behavior in the future; compensatory and exemplary damages in the amount of $5,000,000; punitive damages under 42 U.S.C. Section 1983 and New York State Executive Law; all other damages, penalties, costs, interest, and attorney's fees as allowed by 42 U.S.C Section 1983 and 1988 and

---

[1] The Court takes judicial notice of Plaintiff's waiver of indictment related to this charge, (ECF No. 54-3), as the Court may consider documents attached as an exhibit to a complaint or incorporated by reference thereto, documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. *See* Fed.R.Civ.P. 10(c); *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996).

as otherwise might be allowed by New York State Civil Rights Laws and/or Federal Law; an order prohibiting Defendants and their police officers from lawfully interfering with the rights of Plaintiff and others to be free from stop and frisk and unreasonable search and seizures; an order prohibiting Defendants and their police officers from engaging in racial profiling or otherwise discriminating against Plaintiff or others based on race; an order requiring Defendants to rescind any policies, practices, procedures and/or customs allowing police officers to engage in racial profiling or discrimination based on race; and any relief the Court deems proper. (*Id.* at 20-21.)

The Village Defendants and the Housing Authority Defendants filed two separate motions to dismiss. The Village Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. They allege that Plaintiff failed to state a plausible claim in relation to the following: (1) false arrest and imprisonment; (2) abuse of process; (3) search and seizure; (4) due process; (5) equal protection; (6) Section 1981; (7) the First Amendment; (8) conspiracy; (9) Title VI; (10) Title VII; (11) the U.S. Housing Act; (12) the Fair Housing act. (Village Defendants Memorandum, ("Vill. Def. Mem."), ECF No. 80 at 5-14.) They also allege that the Court lacks jurisdiction over Plaintiff's state law claims. (*Id.* at pp. 15-19). Further, they request that the Court dismiss Officer Munnelly from this action because there is no individual liability under Title VI or Title VII on the basis of qualified immunity. They also seek to dismiss the Village from this action because Plaintiff has failed to properly allege municipal liability. (*Id.* at 19-22). They further request that the Court: strike Plaintiff's request for punitive damages, deny Plaintiff's request for class certification, and dismiss Plaintiff's PCHA's cross-claims. (*Id.* at 22-25.)

The Housing Authority Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) on the following grounds: (1) Plaintiff lacks standing to bring claims under Title VI or the Civil Rights Act of 1964 and the Fair Housing Act; (2) there is no express or implied right

of action under the U.S. Housing Act; (3) Plaintiff failed to plead involvement by the Housing Authority Defendants in his arrest; (4) Plaintiff failed to plead a violation of the equal protection clause; (5) Plaintiff failed to state a claim under 42 U.S.C. §1981; (6) Plaintiff failed to state a claim under 42 U.S.C. §1983; (7) Plaintiff failed to plausibly plead a claim under 42 U.S.C. §1985; (8) Plaintiff failed to comply with Public Housing Law §157. (Housing Authority Defendant's Memorandum, ("House Def. Mem."), ECF No. 70, at 5-21.)

## LEGAL STANDARD

### I.      12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge their claim from conceivable to plausible." *Twombly*, 550 U.S. at 555. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal allegations couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of the complaint…threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 – 79.

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45-45 (1957)). This "is particularly so when the *pro se* plaintiff alleges that his civil rights have been violated." *Sealed*

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## II.     12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction in a federal court bears the burden of proving that jurisdiction by the preponderance of the evidence. *Id.* The court must take all facts in the complaint as true and draw all inferences in favor of the party asserting jurisdiction. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2000). As with Rule 12(b)(6), when dealing with Rule 12(b)(1), the Court construes the allegations in a *pro se* plaintiff's complaint in the light most favorable to the *pro se* plaintiff. *Makarova*, 201 F.3d at 113.

## DISCUSSION

As Plaintiff raises a host of claims, the Court addresses the viability of each in turn.

## I.     Class Certification

Although Plaintiff has not formally moved for class action certification, the AC implies that Plaintiff intends for this case to be a class action. (*See* AC at 7-8.) He asserts:

> Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on their behalf and on behalf of all other African-American tenants and invited guests and applicants similarly situated. The members of this class on whose behalf this suit is brought are so numerous that joiner of all members in impract[ical]. There are questions of law and fact involved common to the class, the claims of plaintiffs as representative parties are typical of the claims of the class, and Plaintiffs as representative parties will fairly and adequately protect the interests of the class. *Id.*

A class can sue "as representative parties on behalf of all members if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Further, a class must satisfy one of the three specified in Fed. R. Civ. P. 23(b). *Id.* at (b). A plaintiff bears the proof beyond a preponderance of the evidence to show Rule 23 has been satisfied. *Shahriar v. Smith & Wollensky Rest. Grp. Inc.,* 659 F. 3d 234, 251 (2d Cir. 2011).

Plaintiff's AC falls woefully short of the pleading requirements necessary for class certification. Plaintiff has failed to: demonstrate the existence of a class; prove numerosity, commonality, typicality, and adequacy; and he has also failed to identify which of Rule 23's categories of class certification he seeks. This Court previously denied class cortication due to Plaintiff's failure to meet these mandatory requirements. (*See* Order, ECF No. 12.) The AC is equally deficient. Plaintiff merely recites the standards without offering any proof to support the mandatory requirements. Accordingly, Plaintiff's claim for class certification is DENIED.

## II.     Fourth Amendment Claims

Plaintiff's first claim regards being unlawfully stopped, frisked, detained, and arrested. (AC at 10.) Plaintiff alleges that he "was stopped, frisked, detained, and arrested" by Officer Munnelly for trespassing on PCHA property. (*Id*. at 10.) He also alleges that because Officer Munnelly "never sought to find out [whether] Plaintiff [was] an invited guest," Officer Munelly pretextually searched and seized him without a reasonable basis. (*Id*.) Plaintiff thus believes that all Defendants are liable to him for false arrest, imprisonment, and illegal search and seizure. (*Id*. at 11.)

The Village Defendant's argue that Plaintiff has not pleaded a plausible claim for illegal search and seizure because the AC shows that Officer Munnelly had at least had reasonable suspicion, if not probable cause, to stop and search Plaintiff based on a suspected violation of

PCHA trespass policy. (Vill. Def. Mem. at 8.) Similarly, they argue that Plaintiff has not pleaded a plausible claim for false arrest and false imprisonment because probable cause constitutes justification and is a total defense for a false arrest. (*Id.* at 5.) Thus, they argue that Officer Munnelly's probable cause shields all of Plaintiff's Fourth Amendment claims as a matter of law, and Plaintiff has not pleaded facts showing a lack of probable cause.

The Court agrees with Defendants. Under *Terry v. Ohio*, an officer may briefly detain and question, or conduct a pat down frisk of an individual if they have reasonable suspicion that criminal activity is occurring. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Further, an officer may conduct a warrantless search incident to an arrest because it is "justified by interests in officer safety and evidence preservation." *Arizona v. Grant*, 556 U.S. 332, 338 (2009). Similarly, when an arresting officer has probable cause, there can be no false arrest or false imprisonment claim. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995); *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest'" *Weyant v. Okst,* 101 F.2d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United* States, 25 F.3d 98, 102 (2d Cir. 1994)). An officer has probable cause "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person arrested.'" *O'Neil v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir. 1993) (quoting *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989)). Only facts known to the officer at the time of the arrest are relevant to probable cause. *Higginbotham v. Sylvester*, 218 F. Supp. 3d 328, 241 (S.D.N.Y. 2016).

Here, while Plaintiff conclusorily alleges that there was no probable cause or reasonable basis for Officer Munnelly to stop, question, and temporarily detain Plaintiff, Plaintiff has not

alleged facts showing a lack of probable cause. Indeed, his allegations do the opposite and support that Officer Munnelly had probable cause. For example, Plaintiff does not dispute that he was not a PCHA resident at the time he was stopped. Nor does Plaintiff ever dispute that he had been served with a list the previous year that indicated that he was banned from the PCHA. PCHA officers have the authority to temporarily stop individuals whom they believe are violating the law or PCHA policies, especially since their job is to maintain the public safety.[2]

In the AC, Plaintiff himself states that "Police Officer Kevin Munnelly only asked the Plaintiff was he on the No-Trespass list. He never sought to find out was the Plaintiff an invited guest." (AC ¶ 23.) Thus, Plaintiff admits that, at the time he stopped Plaintiff, Officer Munnelly was solely attempting to find out whether Plaintiff was legally allowed to be on the premises.

The Court finds that it is perfectly reasonable that a police officer would not have memorized the names and faces of all banned people from a property, particularly when that list contains – as Plaintiff alleges – 120 people. Thus, by Plaintiff's own allegations, since PCHA officers knew that certain persons were banned, for valid reasons such as attempting to engage in criminal conduct, and Plaintiff knew that he was banned, when Officer Munnelly stopped Plaintiff, it was reasonable to ask whether Plaintiff was supposed to be there. Indeed, under such circumstances there would have been no more reasonable way for an officer to find out whether someone belonged on the premises other than by simply asking.[3]

---

[2] Again, the Court notes that it may take judicial notice of Plaintiff's waiver of indictment, which suggests, and which Plaintiff does not dispute, was the basis upon which Defendants banned Plaintiff.

[3] In his Opposition memorandum, Plaintiff contradicts his assertion from the AC and states "Officer Kevin Munnelly never made an inquiry at the time of the arrest whether the Plaintiff was an invited guest nor was he aware if the Plaintiff was on the bar our list." (*See* Plaintiff's Opposition, ("Pl. Opp."), ECF No. 17.) In the face of this direct contradiction, the Court relies on the pleadings in the AC, and only relies on additional allegations in Plaintiff's brief to the extent that they help Plaintiff expound colorable legal arguments already plausibly asserted.

Plaintiff's main grievance seems to be Officer Munnelly's lack of interest in finding out whether Plaintiff had been invited as a guest on the premises. (AC ¶ 23; Pl. Opp.) But an officer's decision to not ask about a potential justification for trespass does not negate whatever probable cause the officer had for an initial stop. *See Johnson v. O'Connel*, No. 15-CV-2288 (NSR), 2018 WL 5085702, at *13 (S.D.N.Y. Oct. 17, 2018) (explaining that probable cause can be based on a reason unknown to the plaintiff that developed earlier in time, which led the officer to believe that detaining an individual was necessary).

Here, the PCHA officers have a vested interest in stopping individuals whom they believe are banned by the trespass policy, especially since many are banned for engaging in criminal activities. And by Plaintiff's own allegations, this was the first and "only" thing Officer Munnelly asked Plaintiff after stopping him. Thus, the Court finds that Officer Munnelly had probable cause to stop, search, and temporarily detain Plaintiff, who was not supposed to be on the premises. As probable cause is a complete defense to each of these Fourth Amendment claims, *see Weyant v. Okst.*, 101 F.3d 845, 852 (2d Cir. 1996), they are dismissed as a matter of law.

### III.     Malicious Abuse of Process

Plaintiff also attempts to raise a cause of action for "malicious abuse of process, false arrest, and false imprisonment." (AC ¶ 38.) The Court has already addressed the false arrest and false imprisonment component of this count. The Court therefore addresses the malicious abuse of process claim.

Although "malicious abuse of process" claim can support liability under Section 1983, the Court first notes that it does not construe this claim as one for *malicious criminal prosecution*, for which there are no supportive facts in the AC.[4] Rather, it interprets Plaintiff's claim as one for the

---

[4] Because Plaintiff clearly alleges only that he was arrested and the charge was dismissed, the Court finds no legal basis upon which Plaintiff could plead malicious prosecution. *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004)

New York tort of *abuse of process*, which lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).

The "gist" of this tort is "the improper use of process *after* it is regularly issued." *Id.* at 80 (emphasis added). "The pursuit of a collateral objective must occur *after* the process is issued; the mere act of issuing process does not give rise to a claim." *Elek v. Inc. Vill. of Monroe*, No. 08-CV-08928, 2011 WL 4472027, at \*7 (S.D.N.Y. Sept. 27, 2011) (emphasis added) (quoting *Lopez v. City of New York*, 901 F. Supp. 684, 691 (S.D.N.Y. 1995)).

Further, "[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process." *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984). "The crux of a malicious abuse of process claim is the collateral objective element." *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011). To satisfy this element, "a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose – that is, 'he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'" *Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009) (citing *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003)). Thus, "a plaintiff must establish that the defendants had an improper purpose in instigating the action." *Savino*, 331 F.3d at 77.

As the Court already discussed, here, Plaintiff failed to allege facts suggesting defendants stopped or arrested him with any improper purpose in mind, let alone that it was to compel Plaintiff to perform any act or to obtain a collateral objective outside the legitimate ends of the process. Again, Plaintiff's allegations relay that he was arrested and detained for trespassing and violating

---

("A termination is not favorable to the accused … if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused.").

10

PCHA policy. His failure to allege any perversion of the process after his arrest is fatal. Further, the Court's finding of probable cause bars this claim just as it bars Plaintiff's Fourth Amendment claims, as district and state courts within this Circuit have held that the existence of probable cause constitutes "excuse or justification" and is a "complete defense" to abuse of process claims. *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 n.7 (2d Cir. 2015) (citing cases); *Shields v. City of New York*, 141 A.D.3d 421, 422 (1st Dep't 2016). Accordingly, Plaintiff's malicious abuse of process claim is dismissed.

## IV.    Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment" *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Therefore, to prevail on a procedural due process claim, a plaintiff must show that he was deprived of protected property or liberty interest without notice and an opportunity to be heard. *Reyes v. Cnty. of Suffolk*, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014). Additionally, to establish a violation of substantive due process, a plaintiff must allege government action so egregious or outrages that it can be said to shock the conscience. *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). Further, where probable cause exists, "there can be no claim for denial of either the procedural or substantive right to due process." *Harris v. Cnty. Of Nassau*, 581 F.Supp. 2d 351, 357 (E.D.N.Y. 2008).

Here, Plaintiff does not allege any facts to support his due process claims other than those that he used to support his Fourth Amendment claims. Plaintiff has not even pleaded a valid "property or liberty interest" in some benefit protectable under the Fourteenth Amendment. *See Brady v. Cochester*, 863 F.2d 205, 211-12 (2d Cir. 1988). That is, Plaintiff has not pleaded with any specificity what liberty or property interest was violated for him as a non-resident, by the "No

Trespass List." And to the extent that Plaintiff is attempting to raise a due process claim based on the common law right that tenants have to invite guests into their premises, Plaintiff lacks standing to assert such an interest as that right belongs solely to the tenant, not the guest, and in any event may be modified by a landlord. *See People v. Finch*, 23 N.Y.3d 408, 413 (213); 24 C.F.R. § 966.

Thus, because Plaintiff's arrest and criminal charge was dismissed as part of a negotiated guilty plea on an unrelated criminal action, and because the Court found that there was probable cause for the police to initially stop and question Plaintiff, and because Plaintiff attempts to invoke the rights of tenants to which he is not entitled as a non-tenant, Plaintiff has not asserted any facts to support a substantive or procedural due process violation. Accordingly, any potential due process claims Plaintiff asserts through the Fifth or Fourteenth Amendment are dismissed as duplicative of Plaintiff's Fourth Amendment claims and barred by probable cause.

## V.     Equal Protection

To plead a selective enforcement claim under the equal protection clause, a plaintiff must allege that he was selectively adversely treated compared to others similarly situated and that the selective treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Okoh v. Sullivan*, 441 F. App'x 813, 814 (2d Cir. 2011). A plausible claim therefore "requires, as a threshold matter, a showing that the Plaintiff was treated differently compared to others similarly situated." *Church of American Knights of the Klu Klux Klan v. Kerik,* 356 F.3d 197, 210 (2d Cir. 2005). "Where 'a plaintiff seeks to prove selective prosecution on the basis of race, he must show that similarly situated individuals of a different race were not prosecuted." *Prasad v. City of N.Y.,* 08 Civ. 3818, 2009 WL 1119412 at *4 (S.D.N.Y. Apr. 24, 2009) (citation omitted). "Conclusory allegations of selective treatment are insufficient to state an equal protection

claim" *Okoh v. Sullivan*, No. 10 Civ. 2547, 2011 WL 672420 at *4 (S.D.N.Y. Feb. 24, 2011), *aff'd*, 441 F. App'x at 814.

Here, Plaintiff alleges PCHA banned him from all of their properties based on race, stating:

On December 3, 2015 Executive Director of the Port Chester Housing Authority falsified official Bossiness records and committed an act of false misconduct which was [r]acial[ly] motivated. He did transcribe a letter which was [r]acial profiling the Plaintiff Christopher Ross banning him from all Port Chester Authority properties without reasonable and probable cause.

(AC ¶ 11.) The Village Defendants argue that Plaintiff has not plausibly pleaded an equal protection selective enforcement claim because he did not allege that he was selectively adversely treated compared to others similarly situated. (Vill. Def. Mem. at 9.) The PCHA Defendants also argue that Plaintiff failed to plead an equal protection clause violation because he did not plead discriminatory intent or impact. (Housing Def. Mem. at 11.)

The Court agrees with Village Defendants that Plaintiff has not alleged that he was adversely treated compared to others similarly situated. Plaintiff may very well believe that the PCHA ban list was designed with a discriminatory purpose, but he has not pleaded a single fact that supports that belief and mere conclusory statements are insufficient to survive equal protection violation allegations. *See Okoh*, 2011 WL 672420 at *4. Moreover, Plaintiff has not pleaded that there were any other individuals, similarly situated to him but for their race, who were treated more favorably than he was. A law or other governmental policy, "neutral on its face and severing ends otherwise within the power of government to pursue, is [not] invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another." *Washington v. Davis*, 426 U.S. 229, 240, 96 S. Ct. 2040, 2048 (1976).

Accordingly, Plaintiff's complaint is deficient for showing any race-based animus or selective persecution because of race. Any equal protection claims are thus dismissed.

## VI.    Claims that Plaintiff Has Abandoned

It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims. *Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44 (2d Cir. 2018) ("We affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by Wilkov when she failed to oppose them in her opposition to Ameriprise's motion to dismiss."); *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313 (S.D.N.Y. 2018) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim."); *Johnson v. City of New York*, 15-CV-8195, 2017 WL 2312924, at *18 (S.D.N.Y. May 26, 2017) (holding that the plaintiff abandoned her claim because her opposition did not address the defendants' arguments, including their argument that they lacked personal involvement); *Barmore v. Aidala*, 419 F.Supp.2d 193, 201 (N.D.N.Y. 2005) (dismissing the plaintiff's claims against the defendants because the plaintiff did not address the defendants' personal involvement arguments in its opposition to the defendants' motion to dismiss).

Of the thirty or so claims that Plaintiff raises in this litigation, Defendants correctly note that Plaintiff abandoned a host of them by failing to address any arguments on them in his Opposition brief. Although the Court has already discussed in detail the merits of Plaintiff's pleadings for a few claims that are at heart of Plaintiff's grievance, there are numerous that it is compelled to dispose of on grounds of insufficient pleadings and complete abandonment.

The Court deems the following claims of Plaintiff fully abandoned, as they are nowhere mentioned in Plaintiff's opposition brief and not even tangentially supported by it:

- Discrimination under 42 U.S.C. Section 1981[5]

---

[5] On the merits, too, Plaintiff would be unable to support this claim for similar reasons that he was unable to support his equal protection claim. One of the *prima facie* requirements for succeeding on a claim under 42 U.S.C. Section 1981 is demonstrating that defendants "intended to discriminate…based upon his race." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000)). As the Court already discussed, beyond a single sentence claiming that Defendants

- General Liability under 42 U.S.C. Sections 1983[6]

- Conspiracy under 42 U.S.C. Section 1985[7]

- Housing Discrimination under Title VI and the Fair Housing Act[8]

- Discrimination under Title VII[9]

- United States Housing Act[10]

---

intended to discriminate against Plaintiff based on race, Plaintiff has failed to provide a single factual allegation in support of his theory. Plaintiff even more egregiously fails to support certain of the other elements for a 1981 claim, such as pleading that he had a contractual relationship that was interfered with through the discriminatory conduct. *See Gaddy v. Waterfront Comm'n*, No. 13 Civ. 332, 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014).

[6] Plaintiff's Section 1983 clam also fails on the merits because establishing a *prima facie* claim for a Section 1983 violation require showing: "(1) that some 'person' has deprived him of a federal right and (2) that the person who has deprived him of that right acted under color of state … law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923 (1980)). As has been discussed throughout this opinion, and is also discussed in the Sections regarding the constitutionality of the trespass policy and *Monell* liability, Plaintiff has failed to show that he has been deprived of any federal right—statutory or constitutional—let alone that there is a basis for which a state actor should be liable to him. Accordingly, this claim has no merit and must be dismissed.

[7] On the merits, too, this claim would fail because Plaintiff failed to plead facts supporting several of the *prima facie* elements for this claim, including: (1) the existence of a conspiracy, (2) an act in furtherance of the conspiracy, and (3) injury in his person or property or deprivation of a right. *See* 42 U.S.C. Section 1985; *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). As is explained throughout this opinion, Plaintiff has not alleged deprivation of a right under any federal statute or constitutional amendment. And Section 1985, much like Section 1983, does not grant Plaintiff any substantive rights but is merely a conduit through which Plaintiff can avail himself of remedies for established federal rights violations. Moreover, there is nothing alleged related to the elements for conspiracy, which require pleading: a meeting of the minds to achieve an unlawful end. *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Plaintiff's conclusory statements alleging a conspiracy, absent any supporting facts, are simply inadequate to survive the standards for pleading a plausible claim.

[8] Plaintiff's claims under each of these three statutes would fail on jurisprudential grounds as well because Plaintiff has not established that he has Article III standing to raise claims under each of these three statutes. Both Title VI and the Fair Housing Act provide causes of actions to individuals who were discriminated against *with respect to* housing. But Plaintiff has conceded that he is not a resident of PCHA and nor does he ever allege that he was attempting to gain housing through PCHA. (*See generally* AC.) Therefore, Plaintiff has not pleaded a relationship with PCHA that would place him within the zone of interest for either of these statues. *See Davis v. City of New York*, 902 F. Supp. 2d 405, 432 (S.D.N.Y. 2012); 42 U.S.C. Section 3694 (describing that a person has standing to sue under the FHA if they are an "aggrieved person" as defined under the Act.) The Court's analysis would be different if Plaintiff were a tenant, seeking to vindicate his right to invite guests into his household. *See People v. Finch*, 23 N.Y.3d 408, 413, 991 (2014).

[9] This claim would also be dismissed because Title VII pertains to discrimination *in the terms and conditions of employment*. (Vill. Def. Mem. at 24); 42 U.S.C. §2000e-2. Plaintiff has not alleged any employment relationship in this case. Further, plaintiff did not exhaust administrative remedies by filing a claim with the EEOC. *Fitzgerald v. Henderson*, 251 F.3d 345, 358-359 (2d Cir. 2001).

[10] On the merits, too, this claim would need to be dismissed as a matter of law as the U.S. Housing Act does not provide an express or implied private right of action. *Chenkin v. 808 Columbus LLC*, 368 F. App'x 162 (2d Cir. 2010).

- New York Constitution[11]

- New York Human Rights Law[12]

- Common Law Defamation[13]

- Common Law Negligence[14]

- Common Law Intentional Infliction of Emotional Distress[15]

- Common Law Assault and Battery[16]

---

[11] As a matter of law, this claim would be dismissed as well because in order to have a private right of action under the New York Constitution, there must be no alternative remedy under federal law or common law. *Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439, 446-47 (S.D.N.Y. 1999); *Felmine v. City of N.Y.*, No. 09-3768, 2012 WL 1999863 at *6 (E.D.N.Y. June 4, 2012). Here, there are already cognizable remedies that Plaintiff is pursuing under both federal and common law. He simply has not met the pleading or jurisdictional prerequisites to avail himself of them.

[12] This claim would alternatively be dismissed for the same reason as Plaintiff's claims under the Fair Housing Act—namely, Plaintiff has not established his standing under N.Y. Exec. Law §296(2-a), which is examined under the same standards as the Fair Housing Act. *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 588 (S.D.N.Y 2012).

[13] Apart from the important jurisdictional bars to Plaintiff's state law claims, Plaintiff's defamation claim is woefully short of satisfying the *prima facie* elements. A *prima facie* defamation claim requires alleging: (1) "a false statement"; (2) "published without privilege or authorization to a third party"; (3) constituting fault as judged by, at minimum, a negligence standard"; and (4) it must be published to "either cause special harm or constitute defamation per se." *Dillon v. City of New York*, 261 A.D. 2d 34, 37-38 (1st Dep't 1999). Further, the defamatory statement must be set forth in the complaint as well as the time, place, manner of false statement and who made the statement. *Id.* Plaintiff has not asserted one defamatory word allegedly uttered by any Defendant. Thus, his claim is facially deficient.

[14] Apart from the threshold requirements, Plaintiff's negligence claim also fails because under New York Law, one cannot recover under negligence for claims against law enforcement officers effectuating an arrest. *See Bradway v. Town of Southhampton*, 826 F. Supp. 2d 458. 476 (E.D.N.Y 2011) ("Under New York law, [m]unicipalities are immune from liability based on the discretionary acts of their employees-including police officers – provided the actions of the officers were not inconsistent with acceptable police practice."). Thus, as a matter of law, Plaintiff cannot recover for claims against law enforcement officers effectuating an arrest, and the AC lacks allegations showing the Village knew or should have known of an employees' propensity for discriminatory conduct.

[15] This claim would also fail as a matter of law because public policy bars claims for intentional infliction of emotional distress against municipalities. *See DiPippo v. Cty. of Putnam*, No. 17-CV-7948 (NSR), 2019 WL 1004152, at *19 (S.D.N.Y. Feb. 28, 2019) (citing *Eckardt v. City of White Plains*, 87 A.D.3d 1049, 930 N.Y.S.2d 22 (2011); *Shahid v. City of New York*, 144 A.D.3d 1127, 43 N.Y.S.3d 88 (N.Y. App. Div. 2016)); *Lauer v. City of New York*, 240 A.D.2d 543, 544 (2d Dep't 1997)).

[16] On the merits, too, this claim would not survive. Plaintiff asserts Defendant Munnelly assaulted him when "Plaintiff was seized, held and [had] his private parts touched by the defendant." (AC ¶ 35.) He further asserts "all contact committed by defendant Police Officer Kevin [Munelly] was offensive to Plaintiff and caused him to fear contact and imminent harm and caused Plaintiff to sustain physical… and/or psychological injury." (*Id.* ¶ 36.) But under New York Law, the arrest and search of a person incident to arrest is not assault. *Figueroa v. Mazza*, 825 F.3d 89, 105-06 (2d Cir. 2016) (finding de minimis physical contact common to virtually every custodial arrest does not constitute assault.). Thus Plaintiff's claim would be dismissed as a matter of law.

- Claim for Punitive Damages[17]

The Court proceeds to the two issues Plaintiff does expound on in his Opposition Motion.

## VII.    Alternative Basis for Dismissing State Law Claims

Beyond the individual deficiencies that the Court has noted with Plaintiff's state law claims, Plaintiff's state law claims also must be dismissed due to a procedural deficiency.

Under New York State law, no action against a village or of any officer agent or employee thereof can proceed unless there has been: (1) a notice of claim; (2) 30 days have elapsed since that notice; and (3) an action commenced within one year and ninety days after the happening of the event which the claim is based. N.Y. Gen. Mun. Law. § 50-i. "The notice should be in wiring, sworn to by or on behalf of the claimant, and shall set forth: (1) the name and post-office address of each claimant, and of his attorney; if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items or damage or injuries claimed to have been sustained so far as then practicable." N.Y. Gen. Mun. Law. § 50-e.

As "[f]ederal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, [and] nor can a federal court grant a plaintiff permission to file a late notice of claim," *Dillion v. Suffolk Cnty. Dep't of Health Servs.,* 917 F. Supp. 2d 196, 216 (E.D.N.Y. 2013), Plaintiff's state law claims against all defendants other than Officer Munnelly in his individual capacity need be dismissed. *See DiRuzza v. Vill. of Mamaroneck, N.Y.,* No. 14 CV 1776 VB, 2014 WL 6670101, at *2 (S.D.N.Y. Oct. 6, 2014).

---

[17] As a matter of law, Plaintiff's claim for punitive damages also fails because governmental entities are immune from punitive damages. *See City of Newport v. Fact Concerts, Inc.* 453 U.S. 247, 271 (1981). Insofar as Plaintiff would have sought them against Officer Munnelly in his individual capacity, the Court reiterates its finding that Plaintiff's AC demonstrates that Officer Munnelly had probable cause to arrest Plaintiff, and therefore Plaintiff has not plausibly pleaded that Officer Munnelly had the "evil motive or intent" or "reckless or callous indifference" necessary to warrant an award for punitive damages *See Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 52 (2d Cir. 2003).

**VIII. Constitutionality of "No Trespass" Policy**

Plaintiff alleges that Defendants' pattern of discrimination violated the First Amendment. (AC at 1.) Defendants argue that Plaintiff has not plausibly alleged a First Amendment violation because he did not allege any of the required elements of a First Amendment claim, most notably he failed to allege any protected speech. (Vill. Def. Mem. at 11; Housing Def. Mem. at 17.) In addition, to the degree that Plaintiff premises a First Amendment violation on a restriction of his freedom of movement or freedom to association, Defendants argue that he has not identified a particular liberty or property interest that has been infringed. The Court agrees with Defendants.

There are various claims a plaintiff can bring under the First Amendment. In order to establish a First Amendment retaliation claim, a plaintiff must show: "(1) he has an interest protected by the First Amendment; (2) defendant's actions were motivated or substantially caused by his exercise of that right; and (3) defendant's actions effectively chilled the exercise of his First Amendment Right." *Davis v. City of New York*, 373 F. Supp. 2d 322, 337 (S.D.N.Y. 2005).

Defendants claim that this iteration of a First Amendment claim fails because Plaintiff failed to identify any protected speech. (Vill. Def. Mem. at 11.) The Court agrees with Village Defendants. It also finds that any retaliation claim would also fail on the pleadings because "[u]nder current Second Circuit precedent, the existence of probable cause is a complete defense to a claim of retaliatory arrest." *Collins v. City of New York*, 295 F. Supp. 3d 350, 368 (2018).

Plaintiff also specifically argues that the "no trespass" policy "infringes upon excluded arrestees' substantive right to freedom of association by preventing arrestees from visiting friends, family members, and significant others who life in Port Chester Housing as well as their right to protection from punishment without fair process." (*See* Pl. Opp.) Defendants argue that Plaintiff does not have a constitutional right, whether under the First Amendment or under the due process

clause to freely associate and visit friends, and even if he did, the government's legitimate purpose in safety would outweigh any such interest. The Court again agrees with Defendants.

The Court notes that there is no generalized right of "social association." *City of Dallas v. Stanglin,* 490 U.S. 19, 25 (1989). There are two types of freedom of association claims that are protected under the constitution – "intimate association" and "expressive association." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). The freedom to intimate association protects "choices to enter into and maintain certain intimate human relationships" including "those that attend to the creation and sustenance of family." *Id.* at 617-19. The freedom to expressive association protects "a right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id*. at 618. The language in Plaintiff's Opposition makes it clear that Plaintiff is referring to the right of intimate association under the Fourteenth Amendment. But, as Defendants note, Plaintiff is a guest and not a tenant of the PCHA, and therefore, he does not enjoy the same type of freedom to associate that a tenant desiring to freely associate with non-tenants would have.

The Court agrees with Defendants. In *Rotary Club*, the Supreme Court held that "the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships." *Board of Directors of Rotary Intern. v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987). While this freedom has been extended to various other relationships in intervening years, it has not been extended to protect visits with family members or friends. *Thompson v. Ashe,* 250 F.3d 399, 407 (6th Cir. 2001) ("the Court has not extended constitutional protection to mere visitation with family members.")

Moreover, in *Thompson*, the Sixth Circuit reviewed the district court's decision in a very similar case. There, too, a plaintiff who was a non-tenant of Tennessee public housing brought a

suit alleging that the Tennessee Authority's "no-trespass" policy/list violated his First Amendment, Fourth Amendment, Fourteenth Amendment, and common law rights to convene with guests. *Id*. The Sixth Circuit held that the no-trespass policy did not implicate any right to freedom of travel or movement and that it also did not implicate any fundamental right to association with friends and family because a non-tenant who has been banned from public premises for safety reasons does not enjoy a fundamental right to freely associate with tenants simply because he might be an invitee. *Id*. at 406-08. Thus, the Sixth Circuit found that under rational basis review, such a claim could not color a First Amendment violation. This Court agrees with the Sixth Circuit's interpretation and therefore finds that Plaintiff has failed, as a matter of law, to allege a First Amendment violation.

## IX.     *Monell* Liability

The Village Defendants argue that they should be dismissed from this case because Plaintiff has failed to establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of N.Y.* (Vill. Def. Mem. at 21.) Plaintiff does address *Monell* liability in his Opposition.

Under *Monell*, a municipality may be held liable for constitutional violations when "the municipality itself caused or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004). A *Monell* claim requires a plaintiff to allege: (1) a custom or policy, (2) that subjected a Plaintiff, (3) to a denial of a constitutional right. *See Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011).

Further, a municipality may be liable if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. Hence, both official and unofficial policies may suffice for establishing *Monell* liability. For an unofficial policy or custom to invite *Monell* liability, the

practice, custom or usage must be so widespread and so persistent that it has the force of law. *See Lauro v. City of New York*, 39 F. Supp. 2d 351, 366 (S.D.N.Y. 1999), *rev'd and rem'd on other grounds*, 219 F.3d 202 (2d Cir. 2000).

"[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis under §1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). "To prevail on a claim for negligent hiring, training, supervision, or retention, a plaintiff must prove that a municipality's failure to properly train, hire, retrain, or supervise its police officers in a relevant respect evidences a deliberate indifference to the rights of its inhabitants." *Henry-Lee v. City of New York,* 746. F. Supp. 2d 546, 556 (S.D.N.Y. 2010). The plaintiff must identify a "specific municipal policy or custom that caused his injuries or provided any allegations supporting a plausible inference of a pattern and practice through a failure to train or supervise." *Zachary v. City of Newburgh*, No. 13 CV 5737, 2014 WL 1508705 at *5 (S.D.N.Y. Apr. 1, 2014).

Plaintiff's *Monell* liability claim first fails because, as already discussed, Plaintiff has failed to allege a constitutional violation, upon which a *Monell* claim must be predicated. This is detrimental to Plaintiff's claim because *Monell* does not provide a new substantive right, but serves as a conduit through which a Plaintiff can avail himself of a remedy for an established constitutional violation.

Additionally, Plaintiff does not actually describe any custom or policy that he believes violated the constitution. Rather, he repeatedly mentions that the police department had "racially discriminatory policies and practices" that they "used to enforce [a] prohibition against trespassing on public housing property." (*See e.g.* Pl. Opp.) But such "[b]oilerplate assertions that a municipality has a custom or policy resulting in a constitutional deprivation of the plaintiff's rights

are insufficient." *Bohmer v. New York*, No. 06 Civ. 11370, 2011 WL 2651872 at *3 (S.D.N.Y. June 16, 2011).

Similarly, while the first few paragraphs of Plaintiff's AC describe the alleged conduct of the Executive Director of the PCHA falsifying official business records, racially profiling Plaintiff, and banning him from all PCHA properties – even if these allegations were substantiated – Plaintiff neither alleges that they were Defendants' official policy or practice, and nor does he allege that such practices were so widespread so as to have the force of law, as is required under *Monell*. *See Lauro*, 39 F. Supp. 2d at 366.

Lastly, while Plaintiff attempts to elucidate what he believes is a "failure to train, supervise, and discipline" theory of liability, he fails to allege any deliberate indifference that could color his failure to supervise theory. Rather all he states is:

> Defendant failed to train, supervise and discipline Police Officers, including the individual named defendant Police Officer Kevin Mun[n]elly to prevent the unlawful stopping, detention, interrogation, and search of Plaintiff stopping, detention, interrogation, and search of plaintiff. Defendant failure to train, supervise and discipline amount to deliberate indifference to the rights of persons with whom the defendant police department and other Police Authorities named defendants in this case comes into contact including Plaintiff. It is this failure that has created and encourage ongoing racial profiling and harassment.

(*See* Pl. Opp.) Such broad, conclusory allegations are wholly insufficient to withstand the standards for any *Monell* theory or 12(b)(6)'s pleading standards generally. Accordingly, all of Plaintiff's claims against the Village and Housing Authority that are predicated on *Monell*, are dismissed.

## X. Involvement of Officer Munnelly and Housing Authority Defendants, Qualified Immunity, Indemnification, and Contribution

Defendants also argue that Plaintiff has not sufficiently pleaded the personal involvement of Officer Munnelly or of the Housing Authority Defendants. (*See* Housing Def. Mem. at 9; Vill.

Def. Mem. at 18.) Whether Plaintiff has sufficiently alleged personal involvement of these individuals or whether there is a basis to shield these individuals from liability based on qualified immunity need not be discussed at this time as Plaintiff has failed to plead a single viable claim, which is necessary for further liability. The same logic applies to Housing Defendants' claims for indemnity or contribution. Should Plaintiff re-plead any of his claims successfully, the Court will deliberate these bases for liability at such time.

## CONCLUSION

For the foregoing reasons, the following of Plaintiff's claims are dismissed *with prejudice*:

- Plaintiff's request for class certification;
- Violations of substantive and procedural due process;
- Housing discrimination under Title VI, the Fair Housing Act, and the United States Housing Act;
- Discrimination under Title VII, the New York Constitution, and New York Human Rights Law;
- Common law negligence, intentional infliction of emotional distress, and defamation;
- Requests for punitive damages;
- Violations of Plaintiff's First Amendment rights.

The following of Plaintiff's claims are dismissed *without prejudice*:

- Plaintiff's Fourth Amendment claims for unlawful search and seizure and false arrest/imprisonment;
- Claims of malicious abuse of process;
- Violations of equal protection;
- Discrimination under 42 U.S.C. Section 1981;
- Violations of 42 U.S.C. Section 1983;
- Conspiracy under 42 U.S.C. Section 1985;
- Common law defamation
- Claims premised on *Monell* liability.

The Clerk of Court is respectfully requested to terminate the pending motions at ECF Nos. 68 and 78. Plaintiff is directed to file a Second Amended Complaint by October 25, 2019. Failure to timely do so may result in dismissal of this action with prejudice.

Finally, the Clerk of the Court is directed to mail a copy of this decision to the Plaintiff at his last address listed on ECF and to file proof of service on the docket.

Dated:    September 27, 2019                             SO ORDERED:
              White Plains, New York

_____

NELSON S. ROMÁN

United States District Judge